Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YESENIA BOWLER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>NESTLÉ HEALTH SCIENCE U.S., LLC (D/B/A NATURE'S BOUNTY),<br><br>*Defendant*. | Case No. 2:24-cv-06521<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1    I.     Introduction. ........................................................................................2

2    II.    Parties. ................................................................................................2

3    III.   Jurisdiction and Venue. ......................................................................3

4    IV.   Facts. ...................................................................................................3

5          A.    Fish oil capsules do not promote heart health and, in fact, may harm

6               it. .............................................................................................3

7          B.    Nature's Bounty sells over-the-counter fish oil capsules that purport

8               to support heart health and omit any information regarding the risks

9               of fish oil supplements. ..........................................................5

10        C.    Nature's Bounty's labeling is false and misleading. .............................7

11        D.    Nature's Bounty's Fish Oil Capsules are priced at a premium due to

12              their falsely advertised heart health benefits. .......................8

13        E.    Plaintiff was misled and harmed by Nature's Bounty's misleading

14              labeling. .................................................................................9

15        F.    No adequate remedy at law. ...............................................10

16    V.    Class action allegations. ...................................................................11

17    VI.   Claims. ..............................................................................................12

18          First Cause of Action Violation of California's False Advertising Law Bus. &

19               Prof. Code § 17500 & 17501 et. seq. ..................................12

20          Second Cause of Action Violation of California's Consumer Legal Remedies

21               Act. .......................................................................................13

22           Third Cause of Action Violation of California's Unfair Competition Law .......16

23           Fourth Cause of Action Breach of Express Warranty. ..................................17

24           Fifth Cause of Action Breach of Implied Warranties. ..................................18

25           Sixth Cause of Action Negligent Misrepresentation and Omission ..................21

26           Seventh Cause of Action Intentional Misrepresentation and Omission ..................22

27    VII.  Relief. ...............................................................................................23

28    VIII.  Demand for Jury Trial. .....................................................................23

Class Action Complaint             i            Case No. 2:24-cv-06521

# I.    Introduction.

1.      Fish oil is one of the most popular dietary capsules.  About 19 million Americans take fish oil capsules, because they believe that the capsules will improve their cardiovascular health.

2.      But the truth is, the capsules do not work.  While eating fish lowers rates of heart attack and stroke risk, taking fish oil capsules does not.  Indeed, "multiple randomized trials pitting fish oil against placebos show no evidence of heart-related benefits from fish oil supplements." [1]

3.      In fact, several recent studies have found that taking fish oil capsules may be *harmful* to heart health.

4.      Fish oil makers, however, continue to market these capsules as helping cardiovascular health.  Scientists and consumer health advocates have warned that fish oil labels are misleading, and that consumers are wasting their money.[2]

5.      Defendant Nestlé Health Science U.S., LLC ("Nature's Bounty" or "Defendant") makes, sells, and markets Nature's Bounty brand fish oil capsules ("Nature's Bounty Fish Oil Capsules" or "Products").  Each bottle is prominently labeled "Heart Health," and makes claims about supporting heart health.

6.      Like other consumers, Plaintiff bought the Nature's Bounty Fish Oil Capsules.  She read and relied on this statement that the Product supports heart health.  She would not have paid the price she did for the Products if she knew that Nature's Bounty Fish Oil Capsules did not benefit heart health and, in fact, may harm it.

# II.    Parties

7.      Plaintiff Yesenia Bowler is domiciled in North Hollywood, California.

8.      The proposed class includes citizens of every state.

---

[1] https://www.health.harvard.edu/heart-health/the-false-promise-of-fish-oil-capsules; https://blogs.scientificamerican.com/observations/the-false-promise-of-fish-oil-capsules/

[2] https://www.health.harvard.edu/heart-health/the-false-promise-of-fish-oil-capsules

9.      Defendant Nestlé Health Science U.S., LLC is a Delaware limited liability company with its principal place of business at 121 River Street, Hoboken, NJ 07030.

## III.    Jurisdiction and Venue.

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

11.    The Court has personal jurisdiction over Defendant because Defendant sold Nature's Bounty Fish Oil Capsules to consumers in California, including to Plaintiff. Directly and through its agents, Defendant has substantial contacts with, and receives substantial benefits and income from California.

12.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV.    Facts.

### A.    Fish oil capsules do not promote heart health and, in fact, may harm it.

13.    Consumers take fish oil capsules because of its purported health benefits. Harvard Medical School describes it thusly:

> "Millions of Americans — including one in five people over age 60 — take fish oil capsules, often assuming the capsules help stave off heart disease. Who can blame them? After all, the product labels say things like "promotes heart health" and "supports healthy cholesterol and blood pressure levels."[3]

14.    The problem is, "there's no evidence that these amber capsules improve cardiovascular health— and they may even harm it."[4]  "Multiple randomized trials have compared fish oil capsules with placebo to look for cardiovascular benefit – and found

---

[3] https://www.health.harvard.edu/heart-health/the-false-promise-of-fish-oil-capsules

[4] *Id.*

nothing."[5] "The bottom line is there is no proof fish oil supplements improve your heart health."[6]

15.    Worse, multiple recent studies have found that fish oil supplements may be *harmful* to heart health.

16.    In the [peer-reviewed[7]] REDUCE-IT trial, 8179 participants were given 'omega-3' and they found that "there was a significant increase in risk of AF [atrial fibrillation] with omega-3 fatty acids."[8]

17.    "In the VITAL Rhythm Study…12,542 participants were randomized to receive a standard dose of omega-3 fatty acids, 840 mg/d (a combination of EPA and DHA) and 12,557 to receive placebo. After a median of 5.3 years, the incidence of AF was 7.2 per 1000 person-years in those taking omega-3 fatty acids vs 6.6 per 1000 person-years in those taking placebo."[9]

18.    And a study of over 400,000 participants concluded that "[r]egular use of fish oil supplements might be a risk factor for atrial fibrillation and stroke among the general population."[10]

---

[5] https://utswmed.org/medblog/fish-oil-pills-heart/; *see, e.g.*, https://www.nejm.org/doi/full/10.1056/nejmoa1811403; https://www.nejm.org/doi/full/10.1056/nejmoa1804989

[6] *Id.*

[7] The REDUCE-IT study was published in the New England Journal of Medicine. *See* https://www.nejm.org/about-nejm/about-nejm ("NEJM delivers high-quality, peer-reviewed research").

[8] Gregory Curfman, MD, *Omega-3 Fatty Acids and Atrial Fibrillation* (March 16, 2021). This article appears in JAMA, a peer-reviewed network of medical journals. *See* https://jamanetwork.com/journals/jama/pages/for-authors ("JAMA, published continuously since 1883, is an international peer-reviewed general medical journal. JAMA is a member of the JAMA Network, a consortium of peer-reviewed, general medical and specialty publications.").

[9] Albert CM, Cook NR, Pester, et al. *Effect of marine omega-3 fatty acid and vitamin D supplementation on incident atrial fibrillation: a randomized clinical trial* (*VITAL Rhythm*) (JAMA, March 16, 2021).

[10] Chen et al., *Regular use of fish oil supplements and course of cardiovascular diseases: prospective cohort study* (BMJMED, 2024).

19.    Yet, because these supplements are advertised as promoting heart health despite overwhelming evidence to the contrary, and because companies omit the fact that taking these supplements could harm heart health, millions of Americans regularly buy fish oil capsules, believing that taking the capsules will improve or promote their heart health.

**B.    Nature's Bounty sells over-the-counter fish oil capsules that purport to support heart health and omit any information regarding the risks of fish oil supplements.**

20.    Nature's Bounty makes, markets, and sells Nature's Bounty brand Fish Oil capsules (the "Nature's Bounty Fish Oil Capsules" or "Products") in the United States. The products are available nationwide.  Upon information and belief, hundreds of thousands (or even millions) of U.S. consumers buy Nature's Bounty Fish Oil Capsules.

21.    Nature's Bounty makes Fish Oil in various sizes and doses, including the following non-limiting examples:

Fish Oil 1000mg Softgels



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fish Oil 1400mg Softgels



Mini Fish Oil 1290 mg Softgels



Fish Oil + Vitamin D3



22.    Each bottle prominently states "HEART HEALTH."  Some bottles make additional statements such as, "Promotes Heart & Vascular Health," and "Supports Heart & Immune Health."

23.    None of the labels on the Products mention the risks of fish oil supplements, including the increased risk of atrial fibrillation.

24.    Each of the Nature's Bounty Products are substantially similar.  They all advertise fish oil capsules, and make representations about promoting heart health, including a prominent representation on the front of each bottle that says, "HEART HEALTH."  And they all omit the risks of taking fish oil supplements to heart health.

**C.    Nature's Bounty's labeling is false and misleading.**

25.    By selling a fish oil supplement that purports to promote "heart health," Nature's Bounty is representing to customers that taking their fish oil supplement is beneficial to heart health.

26.    When a consumer picks up a bottle of Nature's Bounty Fish Oil Capsules, the consumer reasonably believes that taking the capsules will be beneficial to heart

health.  No reasonable consumer reads the label and expects that the supplement has no effect on heart health. And, specifically, when a bottle prominently states on the label, "Heart Health," consumers expect that to be accurate — that the product does help support a healthy heart. But the truth is, the product does not affect heart health.  There is no proof that fish oil capsules improve heart health at all.  In fact, scientific evidence establishes that fish oil capsules *harm* heart health. In this way, Nature's Bounty's affirmative representations are misleading to reasonable consumers.

27.    Similarly, when a consumer picks up a bottle of Nature's Bounty Fish Oil Capsules that says, "Promotes Heart & Vascular Health" or "Supports Heart & Immune Health," the consumer reasonably believes that taking the capsules will be beneficial to heart health.  No reasonable consumer reads those words and expects that the supplement has no effect on heart health.

28.    Worse, because Nature's Bounty Fish Oil Capsules omit any warnings about the risks of fish oil supplements from their labels, no reasonable consumer would know from the labeling that taking fish oil supplements could *harm* their health, specifically by increasing the risk of atrial fibrillation.

**D.    Nature's Bounty's Fish Oil Capsules are priced at a premium due to their falsely advertised heart health benefits.**

29.    The inaccurate labeling of Nature's Bounty Fish Oil Capsules is highly material to reasonable consumers.  The reason that consumers buy fish oil capsules is because they believe that it supports heart health.  No reasonable consumer wants to pay a premium for a fish oil supplement that has no effect on heart health.

30.    Similarly, Nature's Bounty's false and misleading labeling drives the demand for its Fish Oil Capsules.  As explained above, the primary reason that people buy and ingest fish oil capsules is that they believe that it is beneficial to their heart. If consumers knew the truth—that there is no evidence that Nature's Bounty Fish Oil Capsules have any benefit to heart health at all—the price of its products would crater.

31.     Worse, no consumer would pay the current market price for Nature's Bounty Fish Oil Capsules if Nature's Bounty did not omit information regarding the risks of fish oil supplements, specifically that they may be *harmful* to heart health by increasing the incidences of atrial fibrillation.

32.     The reason that consumers purchase Nature's Bounty's Fish Oil Capsules is because they believe they promote heart health.  But without its heart benefits, and with the increased risk of atrial fibrillation, Nature's Bounty's Fish Oil Capsules do not provide this benefit.   What reasonable person wants to pay for and ingest capsules at the current market price if the products do not improve heart health and, in fact, are harmful to heart health?   Thus, the economic injury here is the price premium attributable to the false and misleading heart health statements.

33.     Alternatively, because the false and misleading heart health statement is the sole reason that reasonable consumers purchase Nature's Bounty's Fish Oil Capsules, the economic injury is the entire price of the Nature's Bounty Fish Oil Capsules that Plaintiff and the class members purchased. The products are, in fact, wholly worthless.

**E.    Plaintiff was misled and harmed by Nature's Bounty's misleading labeling.**

34.     Yesenia Bowler purchased Nature's Bounty Fish Oil Capsules at a California Costco in Spring of 2024. She had purchased Nature's Bounty Fish Oil Capsules for years.

35.     Plaintiff purchased the Products because she believed that the Products were good for her heart. She was unaware that the Products did not, in fact, promote heart health.

36.     And, she was unaware that fish oil supplements, such as Nature' Bounty Fish Oil Capsules, actually *increased* her risk of atrial fibrillation, meaning that the Products were actually *harmful* to heart health.

37.     She never would have paid the price she paid for the Products had this information not been omitted from the labels.

38.     Plaintiff wants Nature's Bounty to fix its practices and sell capsules with accurate labeling.  If Nature's Bounty fixes its Products, so that the capsules actually do help support heart health, she would buy them again.  But given Nature's Bounty's past deception, Plaintiff cannot rely on Nature's Bounty's word alone that it has fixed the problem.  Plaintiff faces an imminent threat of harm because she will not be able to rely on Nature's Bounty's labels in the future and will not be able to buy Nature's Bounty's Fish Oil Capsules, even if Nature's Bounty claims to have fixed the issue. To buy Nature's Bounty's Products again, Plaintiff needs the Court to enter an order forbidding Nature's Bounty from claiming that its capsules promote heart health unless the capsules actually promote heart health.

**F.    No adequate remedy at law.**

39.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

40.     A legal remedy is not adequate if it is not as certain as an equitable remedy. To obtain a full refund as damages, Plaintiff must show that the products she received have essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased products that she would not otherwise have purchased, but for Nature's Bounty's misrepresentations.  Obtaining a full refund at law is less certain than obtaining a refund in equity.

41.     Also, winning damages under the CLRA requires additional showings not required under the UCL and FAL. For example, to obtain damages under the CLRA, Plaintiff must prove that she complied with the CLRA's notice requirement. No such requirements exist to obtain restitution. In addition, the CLRA prohibits only particular categories of deceptive conduct.  By contrast, the UCL broadly prohibits "unfair" conduct and is thus broader.

42.     By the same token, Plaintiff's common law claims require additional showings, compared to her UCL, FAL, or unjust enrichment claims. For example, to

prevail on her breach of warranty claim, Plaintiff needs to show that the statements she challenges constitute a warranty and that the warranty was part of the basis of the bargain. No such showings are required by the UCL or FAL, or for an unjust enrichment theory. In fact, the UCL and the FAL were enacted specifically to create new claims and remedies not available at common law. And unjust enrichment exists in part because contractual claims are often more difficult to establish. In this way, Plaintiff's UCL and FAL claims, and Plaintiff's unjust enrichment claims, are more certain than her legal claims.

43.    Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## V.    Class action allegations.

44.    Plaintiff brings the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of limitations period, purchased one or more Nature's Bounty Fish Oil Capsules.

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Nature's Bounty Fish Oil Capsules.

45.    The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity & Ascertainability*

46.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

47.    Class members can be identified through Defendant's sales records and public notice.

### Predominance of Common Questions

48.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its labeling;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of an express or implied warranty;

(4) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

49.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Nature's Bounty Fish Oil Capsules.  There are no conflicts of interest between Plaintiff and the class.

### Superiority

50.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### First Cause of Action

### Violation of California's False Advertising Law Bus. & Prof. Code § 17500 & 17501 et. seq.

### (By Plaintiff and the California Subclass)

51.    Plaintiff incorporates each and every factual allegation set forth above.

52.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

53.     Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

54.     Defendant has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass members.

55.     As alleged more fully above, Defendant falsely advertised its products by falsely representing that Nature's Bounty Fish Oil Capsules support heart health.

56.     Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

57.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

58.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

59.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nature's Bounty Fish Oil Capsules at the price they paid if they had known that the Products do not actually promote heart health and, in fact, may harm heart health, and (b) they received products that were, in truth, worthless.

## Second Cause of Action

### Violation of California's Consumer Legal Remedies Act.

### (By Plaintiff and the California Subclass)

60.     Plaintiff incorporates each and every factual allegation set forth above.

61.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

62.     Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

63.     Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

64.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

65.     As alleged more fully above, Defendant has violated the CLRA by falsely representing that Nature's Bounty Fish Oil Capsules support heart health. Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health. This omission is false and misleading.

66.     Defendant knew, or should have known, through the exercise of reasonable care, that these statements and omissions were false and misleading.

67.     Defendant violated, and continues to violate, section 1770 of the California Civil Code.

68.     Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that its Products have the characteristic of supporting heart health, when in reality they do not.

69.     Defendant violated, and continues to violate, section 1770(a)(7) of the California Civil Code by representing that Products offered for sale are of a particular standard, quality, or grade, if they are another. Defendant represents that its Products meet the standard of supporting heart health, when in reality they do not.

70.    And Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violated this by advertising its Products as being fit for their intended purpose of supporting heart health, when in fact Defendant does not intend to sell the Products as advertised.

71.    Defendant's false labeling was likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known, through the exercise of reasonable care, that these statements were inaccurate and misleading.

72.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

73.    Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

74.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the Products or would have paid less for the products if they had known that the Products do not actually promote heart health, and in fact can be harmful for their heart health.

75.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the subclass, seeks injunctive relief.

76.    CLRA § 1782 NOTICE. On June 24, 2024, a CLRA demand letter was sent to Defendant's registered agent and headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Because Defendant did not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass seek all monetary relief allowed under the CLRA.

77.    A CLRA venue declaration is attached.

### Third Cause of Action

**Violation of California's Unfair Competition Law**

**(By Plaintiff and the California Subclass)**

78. Plaintiff incorporates each and every factual allegation set forth above.

79. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

80. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

81. Defendant violated the unlawful prong of the UCL. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

82. In addition, Defendant engaged in unlawful conduct by violating the California Health & Safety Code § 109875 et seq. (the Sherman Food Drug and Cosmetic Law) which adopts and parallels federal FDCA requirements, including prohibitions on false and misleading labeling.

83. Defendant violated the fraudulent prong. As alleged in detail above, Defendant's representations that its Products promote heart health were false and misleading. Its labeling is likely to deceive, and did deceive, Plaintiff and other reasonable consumers.

84. Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

85. Defendant violated the unfair prong, as detailed above.

86. Defendant's conduct caused substantial injury to Plaintiff and subclass members. The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct (which is none). Inaccurately labeled fish oil capsules have no public

utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels only injure healthy competition and harm consumers.

87.     Plaintiff and the subclass could not have reasonably avoided this injury. As alleged above, Defendant's labeling is false and misleading. Its labeling is likely to deceive, and did deceive, reasonable consumers like Plaintiff.

88.     Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

89.     Defendant's conduct violated the public policy against false and misleading labels, which is tethered to the CLRA and the FAL, as well as California's Sherman Act.

90.     For all prongs, Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

91.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

92.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because they would not have purchased Nature's Bounty Fish Oil Capsules at the price they paid if they had known that the Products do not actually promote heart health, and in fact may harm heart health.

<u>**Fourth Cause of Action**</u>

**Breach of Express Warranty**

**(by Plaintiff, the Nationwide Class, and the California Subclass)**

93.     Plaintiff incorporates each and every factual allegation set forth above.

94.     Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the California Subclass.

95.     Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Nature's Bounty Fish Oil Capsules, issued material, written warranties by

representing that the Products help support a healthy heart.  This was an affirmation of fact about the Products (i.e., a description of the capsules) and a promise relating to the goods.

96.    This warranty was part of the basis of the bargain and Plaintiff and class members relied on this warranty.

97.    In fact, the Nature's Bounty Fish Oil Capsules do not conform to the above-referenced representation because, as alleged in detail above, Nature's Bounty's labeling is inaccurate, and the Products have not been shown to support a healthy heart. Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health. Thus, the warranty was breached.

98.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on June 24, 2024.

99.    Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing harm, because they would not have purchased Nature's Bounty Fish Oil Capsules at the price they paid if they had known that the Products have not actually been shown to promote heart health and, in fact, may harm heart health.

### Fifth Cause of Action

### Breach of Implied Warranties

### (by Plaintiff, the Nationwide Class, and the California Subclass)

100.    Plaintiff incorporates each and every factual allegation set forth above.

101.    Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the California Subclass.

102.    Defendant impliedly warranted that the Nature's Bounty Fish Oil Capsules, which Defendant manufactured or sold, were merchantable and fit for the ordinary purposes for which they were intended to be used.  Defendant breached its implied warranty of merchantability when it manufactured, distributed, and sold the Nature's

Bounty Fish Oil Capsules in un-merchantable condition.  These Nature's Bounty Fish Oil Capsules, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which fish oil capsules are used.

103.    As described in greater detail above, Defendant impliedly warranted that the Nature's Bounty Fish Oil Capsules are fit for the purpose of improving cardiovascular outcomes and supporting heart health.  But Nature's Bounty Fish Oil Capsules have not been shown to support a healthy heart.  They do not promote heart health. Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health. Thus, the warranty was breached.

104.    Defendant also impliedly warranted that the Nature's Bounty Fish Oil Capsules, which Defendant manufactured or sold, were fit for the particular purposes for which they were intended to be used.

105.    Plaintiff and class members purchased Nature's Bounty Fish Oil Capsules, for the particular purpose of improving heart health and cardiovascular outcomes.

106.    Defendant knew, or had reason to know, that Plaintiff and class members were purchasing the Nature's Bounty Fish Oil Capsules for the particular purpose of improving heart health and cardiovascular outcomes.  Defendant is aware that consumers purchase Nature's Bounty Fish Oil Capsules to improve heart health and cardiovascular outcomes.  In fact, Nature's Bounty advertises to consumers that its Fish Oil Capsules improve heart health and cardiovascular outcomes. Moreover, Defendant was aware that fish oil supplements may actually be *harmful* to heart health by increasing the risk of atrial fibrillation and omitted this information from its labeling.

107.    Defendant markets itself as a knowledgeable and effective developer and purveyor of fish oil capsules.

108.    Defendant knew, or had reason to know, that Plaintiff and class members would justifiably rely on Defendant's particular skill and knowledge of fish oil capsules in

1  selecting or furnishing such capsules that would improve heart health and cardiovascular

2  outcomes.

3          109.    Plaintiff and class members did justifiably rely on Defendant's judgment and

4  skill.

5          110.    Defendant breached its implied warranty of fitness when it manufactured,

6  distributed, and sold Nature's Bounty Fish Oil Capsules that do not promote heart health

7  or improve cardiovascular outcomes, despite advertising that they do. Defendant further

8  breached its implied warranty by omitting information regarding the risks associated with

9  fish oil supplements, namely increased risk of atrial fibrillation. These Nature's Bounty

10 Fish Oil Capsules, when sold and at all times thereafter, were not fit for the particular

11 purpose for which consumers purchased them.

12         111.    Plaintiff and the other class members notified Defendant of the breaches of

13 its implied warranties within a reasonable time and/or were not required to do so. Indeed,

14 Plaintiff sent a notice letter regarding Defendant's breaches on June 24, 2024.  Defendant

15 was also on notice of its breaches from other sources, including relevant scientific

16 literature.

17         112.    Defendant's breaches of these implied warranties deprived Plaintiff and class

18 members of the benefits of their bargains.

19         113.    Plaintiff and the class members have had sufficient direct dealings with

20 either Defendant or its agents (retailers and technical support) to establish privity of

21 contract between Defendant, on one hand, and Plaintiff and each of the other class

22 members on the other hand. Nonetheless, privity is not required here because Plaintiff

23 and each of the other class members are intended third-party beneficiaries of contracts

24 between Defendant and its retailers, and specifically, of Defendant's implied warranties.

25 The retailers were not intended to be the ultimate consumers of the Nature's Bounty Fish

26 Oil Capsules and have no rights under the warranty agreements provided with the

27 Nature's Bounty Fish Oil Capsules; the warranty agreements were designed for and

28 intended to benefit the consumer only.

114.    Affording Defendant a reasonable opportunity to cure its breaches would be unnecessary and futile here. Indeed, Defendant has long been on notice of the claims of Plaintiff and class members and has refused to provide a remedy, instead placing the blame on customers or refusing to acknowledge its breaches of warranty.

115.    Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing harm, because they would not have purchased Nature's Bounty Fish Oil Capsules if they had known that the Products have not actually been shown to improve promote heart health and, in fact, were harmful to heart health.

## Sixth Cause of Action

### Negligent Misrepresentation and Omission

### (by Plaintiff, the Nationwide Class, and the California Subclass)

116.    Plaintiff incorporates each and every factual allegation set forth above.

117.    Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the California Subclass.

118.    As alleged more fully above, Defendant made false representations to Plaintiff and class members concerning its statements that the capsules support a healthy heart. Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

119.    These representations were false.

120.    When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

121.    Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

122.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Nature's Bounty Fish Oil Capsules.

123.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

124.    Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because they would not have purchased Nature's Bounty Fish Oil Capsules if they had known that the Products have not actually been shown to promote heart health and, in fact, may be harmful to heart health.

### Seventh Cause of Action

### Intentional Misrepresentation and Omission

### (by Plaintiff, the Nationwide Class, and the California Subclass)

125.    Plaintiff incorporates each and every factual allegation set forth above.

126.    Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the California Subclass.

127.    As alleged more fully above, Defendant made false representations to Plaintiff and class members concerning its statements that the capsules support a healthy heart. Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

128.    These representations were false.

129.    When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

130.    Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

131.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

132.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

133.    Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because they would not have purchased Nature's Bounty Fish Oil Capsules if they had known that the Products have not actually been shown to promote heart health and, in fact, were harmful to heart health.

## VII.    Relief.

134.    Plaintiff seeks the following relief for themselves and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## VIII.    Demand for Jury Trial.

135.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: August 1, 2024                    Respectfully submitted,

By: /s/ *Richard Lyon*
Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Zachary Arbitman*
George Donnelly*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FELDMAN SHEPHERD
WOHLGELERNTER
TANNER WEINSTOCK & DODIG,
LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
zarbitman@feldmanshepherd.com
gdonnelly@feldmanshepherd.com

*Pro Hac Vice Application Forthcoming

*Attorneys for Plaintiff*